*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

In re HELFMAN/HOWARD/TALLENT, Minors.

UNPUBLISHED
February 15, 2024

No. 366775
Wayne Circuit Court
Family Division
LC No. 2020-000804-NA

Before: GADOLA, C.J., and BORRELLO and BOONSTRA, JJ.

PER CURIAM.

Respondent-father[1] appeals by right the trial court's order, entered after a preliminary hearing in these child protective proceedings, finding that it was contrary to the welfare of his minor children, SDH and CDH, to remain in his care. We affirm.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

Respondent-father and respondent-mother are the parents of SDH and CDH. In August 2020, CPS specialist LaTicia Sharp met with SDH and CDH after CPS received a report that respondent-father was abusing alcohol and abusing SDH. SDH and CDH disclosed that respondent-father drank alcohol and became intoxicated while they were in his care. According to Sharp, CDH stated that "she is fearful of her father because he hits [SDH]." Sharp also "observed a video where [respondent-father] was engaging in a physical altercation with [SDH]." Respondent-father admitted to Sharp that "it was him in the video observed punching" SDH and that he had hit SDH before, but he denied ever hitting CDH. In September 2020, petitioner, the Department of Health and Human Services (petitioner or DHHS), filed a petition with the trial court, alleging that it was contrary to SDH's and CDH's welfare to remain in respondent-father's care because they "are fearful of being in his care as there are concerns of [respondent-father]

---

[1] Respondent-mother is a party to the trial court proceedings but is not a party to this appeal. We will not discuss the portions of the proceedings concerning respondent-mother unless relevant to the issues on appeal.

abusing alcohol and engaging in physical altercations with his son, [SDH]." Petitioner requested that the trial court take jurisdiction over the children and place them with the DHHS.

During a preliminary hearing on the petition, Sharp testified that it was contrary to SDH's and CDH's welfare to remain in respondent-father's care because of "concerns of physical abuse and also of drinking alcohol, substance use, and the children are fearful." Sharp requested that respondent-father be granted supervised parenting time. Sharp admitted that respondent-father had a relationship with his children, regularly visited with them and provided support, and that he "offered his home as a plan for the children[.]" The trial court authorized the petition, and removed SDH and CDH from respondent-father's care.

During the adjudication bench trial, SDH and CDH recounted an incident in which respondent-father physically abused SDH while they were staying with him during the summer of 2020. SDH alleged that respondent-father punched him in his chest and arms and "body slammed" him, causing him to hit his head on a nearby shelf. SDH believed that respondent-father had been drinking before the altercation because his speech was slurred and he smelled like beer and liquor. SDH claimed that on 5 to 15 occasions he had seen respondent-father drinking and slurring his words, and that respondent-father frequently smelled like alcohol. Similarly, CDH stated that she had observed respondent-father drinking on more than one occasion and could tell when he had been drinking because of his smell and voice.

The trial court found, by a preponderance of the evidence, that there were grounds to take jurisdiction over SDH and CDH under MCL 712A.2(b)(1) and (2). The trial court entered an order of adjudication, and it subsequently entered an order of disposition requiring respondent-father to comply with a treatment plan that included therapy and substance abuse monitoring and treatment.

Between November 2020 and May 2022, the trial court held several dispositional review and permanency planning hearings to assess respondent-father's compliance with his service plan. In May 2022, the trial court found that respondent-father had successfully completed all of his court-ordered services, returned the children to his care, and instructed respondent-father to pursue a change in custody. During subsequent dispositional review and permanency planning hearings, the trial court addressed issues regarding respondent-father's finances and his efforts to gain custody of his children. At a November 2022 hearing, foster care specialist Dominque Dalton informed the court that respondent-father had recently moved his home and was working with her to establish new housing and pay his bills. Dalton stated that SDH and CDH were adjusting well, had been working on communication with respondent-father, and were establishing "a great relationship with him." The trial court and the parties agreed that the last barrier respondent-father needed to overcome was to obtain a custody order. However, as of March 2023, respondent-father still had not resolved the custody issue.

In April 2023, respondent-father disclosed to foster care specialist Alicia Kirk that "he was unable to provide for his children" because he had "little to no income and struggles to buy food." Respondent-father reported that he was "$500 behind on rent, barely has food in the home, has no transportation and no phone." During a home visit a few days later, Kirk reported that she "witnessed [respondent-father] unsteady on his feet and smelling of alcohol," "displaying loud outbursts, stumbling, jumping up and leave the room, then returning seconds later, yelling unwarranted confrontational comments at the children." Kirk observed SDH "shouting at his

father[,] calling him a drunk and a liar." Kirk also spoke with CDH, who "disclosed that her father gets drunk often. [CDH] stated her father put his hands around her neck prior to Ms. Kirk arriving at the home."

In May 2023, petitioner filed a supplemental petition to again remove SDH and CDH from respondent-father's care, claiming that it was contrary to their welfare to remain in the care of respondent-father because of "his substance abuse and his physical abuse of [CDH]," the condition of his home, and physical neglect.

During the preliminary hearing on the supplemental petition, Kirk stated that during her home visit she observed respondent-father intoxicated, unsteady and slurring his words. SDH and CDH reported to Kirk that respondent-father was drunk. CDH disclosed that "she got into an argument with her dad about school and he put his arms around her neck." CDH told Kirk that she did not want to continue living with respondent-father. Respondent-father told Kirk that "he could not control the children" and "could not get them to school on time." He also told her "the state dropped the kids off and did not provide any help or any resources and that he couldn't feed the kids and he just said he was struggling."

Kirk believed that it was contrary to the children's welfare to remain with respondent-father because of concerns regarding substance abuse and physical abuse, and she recommended supervised visitation. Kirk stated that she had made reasonable efforts to prevent removal, including: providing respondent-father with financial support through gift cards; reaching out to the Friend of the Court (FOC) to address child support issues; identifying a relative placement for the children in Ohio if they were removed from respondent-father's care; creating a safety plan for the children; making home visits; and offering the services provided for in respondent-father's previous treatment plan. Kirk testified that she was currently attempting to get the children access to therapeutic services, and she opined that placement with a relative would meet their needs. During cross-examination, Kirk admitted that her other visits to respondent-father's home "were fine" and did not raise any concerns. Kirk also noted that respondent-father had been able to secure food assistance, had previously complied with his treatment plan, and was committed to having his children returned to him.

Petitioner requested that the trial court authorize the petition, remove SDH and CDH from respondent-father's care, and order supervised visitation because "the same conditions that led to the removal of the children in 2020 appear to be occurring today." The lawyer-guardian ad litem concurred, opining that respondent-father had not benefited from his previous services. Respondent-father's counsel argued that it would be premature to remove the children because respondent-father had successfully completed his previous treatment plan, had been paying child support despite having the children in his custody, and, except for the April 2023 home visit, there were no other issues or incidents with the children. Respondent-father's counsel requested that the trial court order respondent-father to complete services in lieu of removal.

The trial court authorized the petition and removed the children from respondent-father's care, finding that it was contrary to the children's welfare to remain in respondent-father's home. This appeal followed.

-3-

## II. STANDARD OF REVIEW

We review for clear error a trial court's factual findings regarding grounds for removal. *In re Benavides*, 334 Mich App 162, 167; 964 NW2d 108 (2020). A finding is clearly erroneous if the reviewing court "is left with a definite and firm conviction that a mistake has been made." *Id*. (quotation marks and citation omitted). Any error in the trial court's removal order is not grounds for reversal unless it would be inconsistent with substantial justice to permit it to stand. *In re Williams*, 333 Mich App 172, 185; 958 NW2d 629 (2020).

## III. ANALYSIS

Respondent-father argues that the trial court erred by finding that there was sufficient evidence to remove the children from his custody and by failing to consider all of the conditions listed under MCR 3.965(C)(2) when making its determination. We disagree.

After conducting a preliminary investigation, the DHHS may petition the family division of the circuit court to take jurisdiction over a child. *In re Ferranti*, 504 Mich 1, 15; 934 NW2d 610 (2019). The petition must contain "[t]he essential facts that, if proven, would allow the trial court to assume jurisdiction over the child." *Id*. (quotation marks and citation omitted); see also MCR 3.961(B)(3) and MCL 712A.2(b). After a trial court receives the petition and holds a preliminary hearing, it "may authorize the filing of the petition upon a finding of probable cause that one or more of the allegations are true and could support the trial court's exercise of jurisdiction under MCL 712A.2(b)." *In re Ferranti*, 504 Mich at 15.

If the petition is authorized, the trial court must decide "whether the child should remain in the home, be returned home, or be placed in foster care pending trial." *In re Benavides*, 334 Mich App at 167 (quotation marks and citation omitted). MCL 712A.13a(9) governs the court's removal decision and provides:

> The court may order placement of the child in foster care if the court finds all of the following conditions:
>
> (a) Custody of the child with the parent presents a substantial risk of harm to the child's life, physical health, or mental well-being.
>
> (b) No provision of service or other arrangement except removal of the child is reasonably available to adequately safeguard the child from the risk as described in subdivision (a).
>
> (c) Continuing the child's residence in the home is contrary to the child's welfare.
>
> (d) Consistent with the circumstances, reasonable efforts were made to prevent or eliminate the need for removal of the child.
>
> (e) Conditions of child custody away from the parent are adequate to safeguard the child's health and welfare.

MCR 3.965(C)(2) is identical in substance to MCL 712A.13a(9). "MCR 3.965(C)(2) and MCL 712A.13a(9) explicitly require that the trial court find *all* the factors prior to removing a child from a parent's care." *In re Williams*, 333 Mich App at 184 (emphasis in original). However, the trial court is not required to articulate extensive findings addressing every factor. *Id*. at 183. Instead, the trial court's findings must be sufficient for an appellate court to conduct a meaningful review. *Id*.

During the preliminary hearing, the trial court authorized the petition and removed the children from respondent-father's care, stating:

> The testimony presented today supports the claim by [petitioner] that these children are at risk in father's care due to substance abuse, in this case alcohol impairs his ability to appropriately parent. The children report that the father was drunk that day and also other days and on the day that the petitioner visited, the father was observed to be stumbling. He had slurred speech. It was chaos in the home and the claim that he smelled of alcohol.

> The testimony is clear that these children are at risk in their environment.

The trial court's statements establish that it expressly considered MCR 3.965(C)(2)(a) and MCL 712A.13a(9)(a). Moreover, in the order of removal, the trial court indicated the issues presented were "similar to those which were the basis for jurisdiction in this case" and that each of the factors in MCR 3.965(C)(2) and MCL 712A.13a(9) had been established.

The record supports the trial court's conclusions. Despite respondent-father's completion of services addressing his substance abuse and physical abuse issues after the children were removed from his care in October 2020, Kirk observed during her April 2023 visit to respondent-father's home that respondent-father was "unsteady on his feet, smelling strongly of alcohol and slurring his words." SDH and CDH reported to Kirk that respondent-father had been drunk, and CDH disclosed that "she got into an argument with her dad about school and he put his arms around her neck." Respondent-father admitted to Kirk that "he could not control the children," "could not get them to school on time," and was struggling to provide for them financially. These facts support the trial court's findings, under MCL 712A.13a(9)(b) and (c) and MCR 3.965(C)(2)(b) and (c), that there were no other arrangements other than removal to protect the children from harm and that the children would be at risk if they remained in respondent-father's home.

Kirk testified that she made reasonable efforts to prevent removal by providing respondent-father with financial support, reaching out to the FOC to address his child support issues, identifying a relative placement in Ohio, creating a safety plan for the children, and conducting home visits. Kirk also indicated that she was attempting to get the children access to therapeutic services. These facts satisfy the requirements of MCL 712A.13a(9)(d) and (e) and MCR 3.965(C)(2)(d) and (e) that petitioner demonstrate that reasonable efforts were made to

prevent removal and that the children's needs would be met in a relative placement. Because petitioner presented sufficient evidence to establish each factor, there is no clear error. *Benavides*, 334 Mich App at 167.

Affirmed.

/s/ Michael F. Gadola
/s/ Stephen L. Borrello
/s/ Mark T. Boonstra